# UNITED STATES COURT OF APPEALS

Eleventh Circuit
56 Forsyth St., NW
Atlanta, GA  30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 27, 2020

Clerk of Court
U.S. District Court for the
   Southern District of Georgia (Augusta)

RE: Habeas Petition (28 U.S.C. Section 2255)
    Case No. 1:15-cr-59-JRH-BKE-1, *United States v. Davis*

Enclosed is a habeas petition received in this Court on March 26, 2020 from Leon Nathan Davis. Fed. R. App. P. 22(a) provides that "[a]n application for a writ of habeas corpus must be made to the appropriate district court. If made to a circuit judge, the application must be transferred to the appropriate district court." Therefore, this petition is being transmitted to your court for further processing.

By separate letter, Mr. Davis is being advised of the transfer of his documentation to your court.

                    Sincerely,

                    DAVID J. SMITH/ekg

Enc.

**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

| | |
|---|---:|
| David J. Smith<br>Clerk of Court | For rules and forms visit<br>www.ca11.uscourts.gov |

March 27, 2020

Leon Nathan Davis
97831-020
FCI Greenville
P.O Box 5000
Greenville, IL  62246

RE:    Habeas petition (28 U.S.C. Section 2255)
       Case No. 1:15-cr-59-JRH-BKE-1, *United States v. Davis*

Dear Mr. Davis:

This letter is to acknowledge the Court's receipt on March 26, 2020 of the above-referenced documentation.  Fed. R. App. P. 22(a) provides that "[a]n application for a writ of habeas corpus must be made to the appropriate district court.  If made to a circuit judge, the application must be transferred to the appropriate district court."  Therefore, this petition is being transmitted to the United States District Court for the Southern District of Georgia for further processing.

Sincerely,

DAVID J. SMITH/ekg

FEDERAL CORRECTIONAL INSTITUTION GREENVILLE
PO BOX 5000
GREENVILLE, IL 62246

CLEARED SECURITY
MAR 28 2020
U.S. MARSHALS SERVICE
Atlanta, Georgia

ELBERT P. TUTTLE
11TH CIRCUIT COURT OF APPEALS
ATTN: CLERK OF COURT
56 FORSYTH ST NW
ATLANTA, GA 30303

\* MOTION INSIDE \*

LEGAL MAIL

U.S. COURT OF APPEALS
RECEIVED
CLERK
MAR 26 2020
ATLANTA, GA

MARCH 23, 2020

TO: CLERK OF COURT

UNITED STATES OF AMERICA V. LEON NATHAN DAVIS
CASE NUMBER 1:15CR00059-1

I., THE PETITIONER, LEON DAVIS WISHES TO FILE A 2255 MOTION IN THE 11th CIRCUIT COURT OF APPEALS.

DUE TO THE DAVIS V. THE UNITED STATES OF AMERICA, THE UNITED STATES SUPREME COURT RULED IN FAVOR OF DAVIS WHICH DIRECTLY AFFECTS MY CONVICTION.

ALSO DUE TO THE RULING OF WRIGHT V. THE UNITED STATES OF AMERICA, THE 1st CIRCUIT COURT OF APPEALS DECISION ALSO MAKES MY CONVICTION UNCONSTITUTIONAL.

I ASK THE COURT OF APPEALS OF THE 11TH CIRCUIT TO VACATE MY SENTENCE AND ORDER MY RELEASE IMMEDIATELY. THANK YOU.

I HAVE ENCLOSED A MEMORANDUM OF LAW IN SUPPORT OF THE ABOVE CLAIMS.

SINCERELY,
Leon Davis
LEON DAVIS

Case 1:15-cr-00059-JRH-BKE   Document 25   Filed 03/31/20   Page 6 of 13

## MEMORANDUM OF LAW IN SUPPORT

**Lindh**, 212 F.Supp.2d 541, 578 (4th Dist. 2002), states;
"An analysis of whether Count Ten should be dismissed begins with the charging statute and its' corresponding definition of 'crime of violence.' Section §924(c)(1)(A) provides that 'any person who, during and in relation to any crime of violence...uses or carries a firearm, or who in furtherance of any such crime, possesses a firearm,'"shall receive a term of imprisonment" in addition to the punishment provided for such crimes of violence." And, a crime of violence is defined in this context as a felony 'that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.' 18 U.S.C. §924(c)(3)(B). In **US v. Aragon**, 983 F.2d 1306, 1312 (4th Cir. 1993), the Fourth Circuit found that identical language on 18 U.S.C. §16(b).

> directs the Court to look to the generic nature of an offense in deciding whether the offense is a 'crime of violence'...The language 'by its nature' relates to the intristic natureof the crime, not to the facts of each individual commission of the offense, (emphasis in the original). Accordingto the Fourth Circuit, the language of Section 16(b) "mandates that the Court embark upon a categorical approach to determine whether a particular crime, 'by its nature,' qualifies as a 'crime of violence,' "**Aragon**, 983 F.2d at 1313; see also: **Taylor v. US**, 495 US 575, 109 L.Ed.2d 607, 110 S.Ct. 2143 (1990). Thus, whether Counts Four through Nine qualify as crimes of violence turns on whether they intristically, categorically, and by thier nature involve a substantial risk of physical force against the person or property of another.

Count Four charges **Lindh** with conspiring knowingly to provide material support and resources to a foreign terrorist organization, namely Al Queda, in violation of Section §2339B. Count Five charges the substantive offense, also in violation of Section §2339B. Both of these crimes are, by thier nature, 'crimes of violence'. Providing material support or resources to a terrorist organization--which may include "weapons, lethal substances, [or] explosives," but may be just as deadly if it is "currency or monetary instruments"--is categorically a 'crime of violence', as Congress recognized when it enacted Section §2339B. Furthermore, Congress was clearly mindful of the violent nature of this crime because it provides material support or resources to a terrorist organization, there is a <u>"substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. §924(c)(3)(B)</u>. (emphasis added). The phrase "in the course of committing the offense" does not mean, as **Lindh** suggests, that courts must be blind to the natural consequences --the natural risks-- attendant to the aiding and abetting of terrorism proscribed by Section §2339B. Rather, the statute requires assessment of the risks that may result from providing material support or resources to terrorists in a manner that Section

§2339B forbids. See: <u>Aragon</u>, 983 F.2d at 1313. It takes little imagination to conclude that providing material support and resources to a terrorist organization creates a <u>substantial risk that the violent aims of the terrorists will be realized</u>. Violence, therefore, is intristic to the crimes with which <u>Lindh</u> is charged.

Analogous authority supports this result. Thus, providing support to a terrorist organization in violation of Section §2339B is analogous to conspiracies to commit 'crimes of violence', which courts have uniformly held to be 'crimes of violence,' even though "the offense is complete upon reaching an agreement <u>without the use of any force</u>." <u>US v. Greer</u>, 939 F.2d 1076, 1099 (5th Cir. 1991). See also: <u>US v. Ward</u>, 171 F.2d 188, 192-93 (4th Cir. 1999); <u>US v. Chimurenga</u>, 760 F.2d 403-04 (2nd Cir. 1985). Like a conspiracy, a terrorist organization "provides a focal point for collective criminal action," and knowingly providing material support and resources to such an organization "increases the chances that the planned crime will be committed beyond that of a mere possibility" and is therefore an act involving a <u>"substantial risk"</u> of violence. <u>Chimurenga</u>, 706 F.2d at 404. Just as committing an overt act in furtherance of a violent may constitute a 'crime of violence', so too can a <u>nonviolent act in support of violent terrorist activities</u>."

Therefore, under <u>Lindh</u>, Section §2339B offenses fall under 18 U.S.C. §924(c)(3)(B), which <u>Davis</u> has held are Unconstitutional and void, no longer 'crimes of violence,' and subject to vacation of that charge.

In <u>Doe</u>, 145 F.Supp.2d 167 (2nd Dist. 2015); "In the instant case, the Court considers whether an ordinary person would know that a 'crime of violence' under 18 U.S.C. §16(b) encompasses a conspiracy to provide material support to a FTO in violation of 18 U.S.C. §2339B. That provision provides, in pertinent part;

> Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. 18 U.S.C. §2339B. Material support includes: any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, personnel, (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials, 18 U.S.C. §2339A. To be culpable, §2339B explicitly requires that an actor know one of three things about the organization he or she is materially supporting: (1) that the organization is a 'terrorist organization;' (2) that the organization has engaged or engages in 'terrorism' 18 U.S.C. §2339B. The Second Circuit has not addressed whether providing material support, on its own, qualifies as a 'crime of violence' under 18 U.S.C. §16(b). However, the few districts that have considered the issue have found that it does. See: <u>US v. Goba</u>, 240 F.Supp.2d 242, 251 (W.D. N.Y. 2003); <u>US v. Lindh</u>, 212 F.Supp.2d 541, 578-82 (E.D. Va. 2002); See also: <u>US v. Viglakis</u>, No. 12-CR-585, 2013 US Dist LEXIS 118919, 2013 WL 4477023, at *7 (S.D. N.Y. Aug. 14, 2013)(identifying material support in violation of 18 U.S.C. §2339B as the 'predicate crime of violence' required for the firearms

charge under §924(c), which defines 'crime of violence' with language identical to that in 18 U.S.C. §16(b); US v. Ahmed, No. 10-CR-131, 2012 US Dist LEXIS 39451, 2012 WL 983545, at *3 (S.D. N.Y. Mar. 22, 2012)(same).

In Lindh, the defendant moved to dismiss part of the indictment charging him with using or carrying a firearm in violation of 18 U.S.C. §924(c), arguing that his alleged material support of an FTO could not qualify as the predicate 'crime of violence' required by 18 U.S.C. §924(c). Lindh, 212 F.Supp.2d at 578. The Court rejected that argument and found that, under the 'categorical approach,' providing material support to a terrorist organization was, 'by its nature,' a 'crime of violence'. Id at 579. The Court emphasized that materially supporting terrorist organizations by providing them "weapons, lethal substances, [or] explosives,'...may be just as deadly [as providing support through] 'currency or monetary instruments.'" Id.(aliteration in original)(quoting 18 U.S.C. §§ 2339A, 2339B). The court also highlighted the statute's enhanced penalties for circumstances in which 'death of any person results,' finding that this demonstrates Congress's concern with the violent nature inherent in providing material support to a terrorist organization, Id. (quoting 18 U.S.C. §2339B). As to the requirement that the risk of force arise 'in the course of committing' the offense, the court held that it need not ignore the natural 'consequences' and 'risks' that are 'attendant to the aiding and abetting of terrorism proscribed by Section §2339B." Id. The Court noted that the provision of material support was similar to co-conspirators agreeing to commit a violent crime, where, although the underlying agreement is non-violent, the conspiracy still qualifies as a 'crime of violence' because of the agreement's aims. Id.

Similar to the Court in Lindh, the district court in Gaba held that providing material support constitutes a 'crime of violence' under the Bail Reform Act. Gaba, 240 F.Supp.2d at 251. Citing Lindh, the court held that under the categorical approached required by the Second Circuit, "[w]hen one provides material support or resources to a terrorist organization, there is a substantial risk that physical force against the person or the property of another may be used in the course of committing the offense." Id at 250 (quoting Lindh, 212 F.Supp.2d at 579) as in Lindh, the court rejected the defendant's argument that in evaluating the risk of physical force the court must ignore the risks stemming from providing material support, and found that providing material support is akin to conspiracy to commit a violent crime. Id at 250-51.

Here the Court is not persuaded that §16(b) fails to provide notice to an ordinary person that, 'by its nature,' conspiring to provide material support to an FTO will qualify as a 'crime of violence'. The material support statute as a whole -- the punitive scheme it sets out and the knowledge it requires to be guilty of the offense -- compels the conclusion that §16(b) does provide notice to the ordinary person that conspiring to provide material support to an FTO will qualify as a crime of violence."

What Doe established and the other Courts had agreed to, was the fact that the 'crime of violence' level that was assigned to matters under 18 U.S.C. §2339B was that of the second paragraph, the 'residual clause' section of either 18 U.S.C. §924(c)(3)(B) or §16(b), but not to the 'force clause' Section of the statutes. Lindh first compared this under 18 U.S.C. §924(c)(3)(B), then Doe took this to parallel it to 18 U.S.C. §16(b). Had Dimaya or Davis existed at the time of these two arguments, both would have been then vacated as Unconstitutional and void ab initio, (see: Norton 118 US 425, 442 (1886); Hackett, 228 US 559, 566 (1913)).

Goba, 240 F.Supp.2d 242, 251 (2nd Dist. 2003); The Court also concurs in Judge Ellis's conclusion that providing support or resources to a terrorist organization in violation of §2339B is akin to a conspiracy to commit a 'crime of violence'. Lindh, 212 F.SUpp.2d at 580. The Second Circuit has consistently found that conspiracies to commit 'crimes of violence' are, themselves, 'crimes of violence'. See e.g., US v. Elder, 88 F.3d 127, 129 (2nd Cir. 1996)(noting that conspiracy to commit Hobbs Act Robberies itself is 'crime of violence'); US v. Chimurenga, 760 F.2d 400, 403-04 (2nd Cir. 1985)(conspiracy to commit armed robbery is a 'crime of violence' under the Bail Reform Act).

As the Second Circuit stated in Chimurenga:

> The existence of a criminal grouping increases that the planned crime will be committed beyond that of a mere possibility. Because the conspiracy itself provides a focal point for collective criminal action, attainment of the conspirators' objectives becomes instead a significant probability. Chimurenga, 760 F.2d at 404 (citing US v. Greer, 467 F.2d 1064, 1071 (7th Cir. 1972)).

Accordingly, this Court finds that providing material support or resources to a foreign terrorist organization <u>involves a substantial risk that physical force against the person or property of another may occur</u>. 18 U.S.C §2339B is therefore a 'crime of violence' as that phrase is defined in 18 U.S.C. §3156(a)(4)(B)."

18 U.S.C. §3156.   Definitions
   (a) As used in Sections §3141-§3150 of this chapter [18 USCS §§3141-3150] --
      (4) the term "crime of violence" means --
         (A) an offense that has an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another;
         (B) any other offense that is a felony and that, by its nature, <u>involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.</u>

18 U.S.C. §924(c)(3) Definitions
   (3) For purposes of this subsection, the term, 'crime of violence' means an offense that is a felony and --
      (a) has as an element of the offense, the use, attempted use, or threatened use of physical force against the person or porperty of another; or
      (b) that by its nature, <u>involves a substantial risk that physical force may be used in the course of committing the offense.</u>

Therefore, as the statutes themsleves so state, there exists no difference in the wording uses in 18 U.S.C. §3156 and that used in 18 U.S.C. §924(c)(3)(B), or for that matter, that used in 18 U.S.C. §16(b). In actuallity, that is due to the fact that once 18 U.S.C. §16(b) was established, the other Statutes derived thier language from 18 U.S.C. §16(b). Thus, the findings within <u>Goba</u>, based upon Section 18 U.S.C. §3156 and those in <u>Doe</u>, based upon a 18 U.S.C. §16(b) / §924(c)(3)(B) show that all of those Statutes agree that 18 U.S.C. §2339B offenses, other than those with underlying predicate offenses that apply force, such as murder, all other offenses, such as 'material support' as in Petitioner's case at hand, fall under the second paragraph, not 'as an element have the use, attempted use, ot threatened use of physical force agaisnt the person or property of another,' which is commonly referred to as the 'force clause.' Petitioner's 'material support' does not fall within the 'force clause', thus <u>Davis</u> and <u>Dimaya</u> have now rendered that offense as Unconstitutional and void <u>ab initio</u>.

Being such ruled, and both <u>Davis</u> and <u>Dimaya</u> being given retroactivity as Consitutional changes in a statute, thus applied under 28 U.S.C. §2255 Motions, Petitioner is permitted to file for that relief, courts holding this to be a substantive change in the precedent laws. Petitioner is thus entitled to relief in the form of the vacation of the offense.

Does the Petitioner have an argument under the holdings of the
<u>Wright</u>  937 F.3d 8, 23-25 (1st Cir. 2019), case ?
PETITIONER AVERS THIS IS TRUE.

"<u>Wright</u> was convicted on Count One of violating 18 U.S.C. §2339B.. '[T]o prove a violation [of §2339B], the government must establish that a defendant (1) knowingly provided or attempted or conspired to provide material support (2) to a foreign terrorist organization (3) that the defendant knew had been designated a foreign terrorist organization or had engaged in terrorism.' <u>US v. Dhirane</u>, 896 F.3d 295, 303 (4th Cir. 2018); cert, denied sub nom., <u>Jama v. US</u>, 139 S.Ct. 1207, 203 L.Ed.2d 231 (2019)(citing <u>Holder v. Humanitarian Law Project</u>, 561 US 1, 16-17, 130 S.Ct. 2705, 177 L.Ed.2d 355 2010)). 18 U.S.C. §2339B goes on to define 'material support or resources' as 'any property, tangible or intangible, or service, including,' among other things, 'personnel (1 or more individuals who may be or include oneself||.' Id. §2339B(g)(4)(defining 'material support or resources' in accordance with the definitions used in 18 U.S.C. §2339A(b)(1)).

The  indictment alleged that, in violation of §2339B, <u>Wright</u> conspired to provide 'material support or resources' in the form of 'services and personnel' to ISIS. At trial, however, the government argued only that, in connection with the co-conspirators' plot to kill Geller and police officers in the United States, <u>Wright</u> engaged in a conspiracy to provide 'personnel' - himself and potential recruits - and not 'services' to ISIS.

The government limited its case at trial to the 'personnel' theory of liability. The government did so on the understanding that the jury should be in agreement, in the event that the jury returned a guilty verdict, as to the particular type of 'material support or resources' - i.e., 'personnel' or 'services' - that Wright had conspired to provide.

With regard to 'personnel,' §2339B provides that:

> No person may be prosecuted under this section in connection with the term 'personnel' unless that person has knowingly provided, attempted to provide, or conspired to provided a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization.
>
> Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organizations' direction and control. Id. §2339B(h).

Wright's counsel argued to the District Court, that, under the definition of 'material support or resources,' provided in §2339A(b)(1), 'personnel...is an example of a type of service.' Neither §2339A, nor §2339B provides a definition of 'service.' But, the Supreme Court, in the course or construing §2339B, has noted that 'a person of ordinary intelligence would understand the term 'service' to cover advocacy performed in coordination with, or at the direction of, a foreign terrorist organization.' Holder, 561 US at 24 (emphasis added). Thus, drawing on Holder and the contention that 'personnel is a type of service,' Wright's counsel requested that, despite the government's representation thta it would press at trial only the 'personnel' and not the 'services' theory of Wright's criminal liability set forth in the indictment, the District Court 'still instruct the jury that material support implies coordination."

The District Court agreed with Wright's counsel on this point. The government did not object. In consequence, the issue of whether the plot to kill Geller and the police officers that Wright was charged with conspiring to carry out was undertaken 'in coordination with' ISIS, along with the issue of whether that plot was undertaken 'at the direction of ISIS,' became key issues at trial.

The 'at the direction of' and 'in cooridination with' theories 'provide alternative, independently sufficient grounds for' sustaining the conviction with respect to the 'material support or resources' element of the conspiracy offense at issue. US v. Gaw, 817 F.3d 1, 5 (1st Cir. 2016)(quoting US v. Cruz-Arroyo, 461 F.3d 69, 73(1st Cir. 2006)). We have no need to address, however, whether there was sufficient evidence to convict Wright on the theory that he conspired to be part of a plot that was carried out 'at the direction of' ISIS. This is because we reject Wright's contention that there was insufficient evidence for a rational jury to find beyond a reasonable doubt that Wright conspired to carry out a plot to kill Geller and others 'in coordination with' ISIS.

See Id. ("[A]dequate proof of one [of two alternative theories of criminal liability] obviates the need for proof of the other.' (quoting Cruz-Arroyo, 461 F.3d at 73))."

In the Petitioner's case, the theory fails, however, since there is no underlying offense that remains, as the attempted and conspiracy to murder, existed in the case of Wright. The Petitioner only 'conspired' through an unnamed source somewhere in Turkey, whom no proof of working under the direction of a foreign terrorist organization is given, thus knowledge this is the case cannot then be comported to the Petitioner. That being the case, there is no evidence in the case of the Petitioner to prove or support that he was either, 'in coordination with' or 'at the direction of' that foreign terrorist organization, since Wright holds that --

material support implies coordination.

Recalling that Wright also stated, using the definition of the 18 U.S.C. §2339B(h) --

INDIVIDUALS WHO ACT ENTIRELY INDEPENDENTLY OF THE FOREIGN TERRORIST ORGANIZATION TO ADVANCE ITS GOALS OR OBJECTIVES...

SHALL NOT BE CONSIDERED TO BE WORKING UNDER THE FOREIGN TERRORIST ORGANIZATIONS' DIRECTION AND CONTROL.

Therefore, Petitioner, who has no evidence that any foreign terrorist organization made any coordinated or controlled effort to obtain his 'personnel or services' to aid thier goals, but merely the individual Petitioner who paid for and attempted to meet with a source somewhere in Turkey, for which the Government offers no proof that Petitioner had direct knowledge whether or not some terrorist organization arranged that, and, in light of the fact that the terrorist organization so claimed herein made no effort to 'obtain the personnel or services' of the Petitioner, this Petitioner paying his own airfare, and perhaps being scammed in Turkey once he arrived, thus not in 'coordination with' or 'under the direction of' any terrorist organization...but merely and individual acting independently, as 18 U.S.C. §2339B(h) states cannot be considered for conviction.