IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

LEON NATHAN DAVIS                          )
                                           )
                    Petitioner,            )
                                           )
          v.                               )          CV 120-051
                                           )          (Formerly CR 115-059)
UNITED STATES OF AMERICA,                  )
                                           )
                    Respondent.            )

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Petitioner, an inmate at the Federal Correctional Institution in Greenville, Illinois, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  Respondent moves to dismiss the § 2255 motion.  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 5), Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.      **BACKGROUND**

        A.      **Indictment and Agreement to Plead Guilty**

        On February 5, 2015, the grand jury in the Southern District of Georgia returned a one-count indictment against Petitioner charging that in the spring of 2014, he possessed firearms, as a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  United States v. Davis, CR 115-017, doc. no. 1 (S.D. Ga. Feb. 5, 2015).  The Court appointed attorney Michael Loebl to represent Petitioner.  Id., doc. no. 12.

Although initially charged as a felon in possession of firearms, Petitioner reached a plea agreement with the government on a separate charge, and on May 27, 2015, was charged by information with one count of attempt to provide material support or resources to a designated foreign terrorist organization, in violation of  18 U.S.C. § 2339B.  United States v. Davis, CR 115-059, doc. no. 1 (S.D. Ga. May 27, 2015) (hereinafter "CR 115-059").   The terrorism-related charge followed from Petitioner's October 24, 2014 arrest on a state parole violation, resulting from a cooperative investigation by the Federal Bureau of Investigation, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the Richmond County Sheriff's Office, and the Georgia State Board of Pardons and Paroles.   Presentence Investigation Report ("PSI") ¶ 5. Officers arrested Petitioner as he approached a ticket counter at Hartfield-Jackson Atlanta International Airport as he prepared to board a flight to Istanbul, Turkey, where he intended to be smuggled into Syria to join the terrorist organization ISIS.  PSI ¶¶ 11, 16.  Petitioner faced a statutory sentence of not more than fifteen years of imprisonment.  Id., doc. no. 2.  Attorney Loebl also represented Petitioner on the § 2339B charge.  Id., doc. no. 9.

On May 27th, Petitioner appeared with counsel and entered a guilty plea to the one-count information.  Id., doc. nos. 7-8.  The written plea agreement identified the elements of the offense as:

> (1) that the Defendant knowingly attempted to provide material support or resources to a foreign terrorist organization; (2) that the Defendant knew that the organization was a designated terrorist organization, or that the organization had engaged or was engaging in terrorist activity or terrorism; and (3) that the Defendant's intent was strongly corroborated by his taking a substantial step toward committing the crime.

Id., doc. no. 8, pp. 1-2 (hereinafter "Plea Agreement").   By signing the Plea Agreement, Petitioner admitted he knowingly attempted to provide material support and resources, including services, personnel, and himself, to the "Islamic State of Iraq and the Levant

2

("ISIL"), also known as the 'Islamic State of Iraq and al-Sham ("ISIS")' knowing that the organization was designated a foreign terrorist organization." Id. at 2. He further admitted attempting to provide this support by traveling from Augusta to the Atlanta International Airport with the intent to board a flight for Turkey and journey on to Syria in an attempt to join ISIL. Id. As part of the plea deal, the government agreed to dismiss the indictment in CR 115-017. Id. at 6.

### B.    Sentencing

The United States Probation Office prepared a PSI which provided for a Total Offense Level of thirty-seven, a Criminal History Category of VI, and a Guidelines imprisonment range of 360 months to life. PSI ¶¶ 32, 44, 74. However, because the statutory maximum for the charge is fifteen years, the Guidelines range was reduced to 180 months. 18 U.S.C. § 2339B[1]; PSI ¶ 74. Petitioner did not file any objections to the PSI. See PSI Add. On July 28, 2015, Chief United States District Judge J. Randal Hall sentenced petitioner to 180 months in prison. CR 115-059, doc. no. 16. Petitioner did not file a direct appeal.

### C.    § 2255 Motion

In a motion dated March 23, 2020, Petitioner moved to vacate his conviction in light of United States v. Davis, 139 S. Ct. 2319 (2019). (Doc. no. 1.) He also claims cases outside of the Eleventh Circuit, interpreting 18 U.S.C. § 924(c) and explaining the evidentiary burden of proof at a § 2339B trial on the terrorist charge, support his request for immediate release or resentencing to ten years in prison. (Id.; doc. no. 7.) Respondent moves to dismiss the motion, arguing the conclusory claims form no basis for relief because Davis, supra, does not apply to

---

[1]The statutory penalty for a violation of § 2339B was subsequently increased from fifteen to twenty years. Pub. L. 114-23, Title VII, § 704, June 2, 2015, 129 Stat. 300.

Petitioner's case, and the remaining claim is untimely, procedurally defaulted, and without merit.  (See doc. no. 5.)

## II.    DISCUSSION

### A.    <u>Davis</u> Does Not Apply to Petitioner's Conviction Under § 2339B

Petitioner is not entitled to relief on Ground One of his motion because <u>Davis</u> does not apply to Petitioner's conviction under § 2339B.  Section 924(c) requires imposition of a mandatory sentence for an individual convicted of using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime."  Sections 924(c)(3)(A) and (B) define "crime of violence" as an offense that is a felony and:

> (A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Subsection A is commonly referred to as the "elements clause" and subsection B is known as the "residual clause."  <u>In re Pollard</u>, 931 F.3d 1318, 1329 (11th Cir. 2019) (*per curiam*).

In <u>Davis</u>, the Supreme Court  "extended its holdings in <u>Johnson v. United States</u>, [576 U.S. 591], 135 S. Ct. 2551, 192 L.Ed.2d 569 (2015), and <u>Sessions v. Dimaya</u>, — U.S. —, 138 S. Ct. 1204, 200 L.Ed.2d 549 (2018), to § 924(c) and held that § 924(c)(3)(B)'s residual clause, like the residual clauses in the Armed Career Criminal Act and 18 U.S.C. § 16(b), is unconstitutionally vague."  <u>In re Navarro</u>, 931 F.3d 1298, 1301 (11th Cir. 2019) (*per curiam*) (citing <u>Davis</u>, 139 S. Ct. at 2324-25, 2336).

However, Petitioner was not charged with, or convicted of, *any* § 924(c) offense. Neither Petitioner's original motion, nor his response to the motion to dismiss, explains how or why a Supreme Court decision addressing a statute completely unrelated to his terrorism-

related statute of conviction warrants vacating his conviction.   Davis is inapplicable to

Petitioner's § 2339B conviction, and he is not entitled to relief on Ground One.

**B.     Any Remaining Challenge to Petitioner's 2015 Conviction or Sentence Is Untimely, Procedurally Defaulted, and Without Merit**

**1.   Petitioner's Motion is Untimely, and He Is Not Entitled to Equitable Tolling**

28 U.S.C. § 2255(f), as amended by the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA"), provides a one-year statute of limitations for § 2255 motions that runs

from the latest of four possible dates:

1.      the date on which the judgment of conviction becomes final;

2.      the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

3.      the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

4.      the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).  Petitioner's judgment of conviction entered on July 29, 2015, and because

Petitioner did not file a direct appeal, his conviction and sentence became final fourteen days

later.  See Mederos v. United States, 218 F.3d 1252, 1253 (11th Cir. 2000) (explaining

judgment of conviction final when time to appeal expires); Fed. R. App. P. 4(b)(1).   As

discussed above, Davis does not apply to Petitioner's conviction and therefore did not reset his

one-year statute of limitations under § 2255(f)(3).  Because his conviction became final in

August 2015, the instant motion filed in March 2020 is outside the one-year statute of

limitations and untimely.

An otherwise untimely § 2255 motion may be considered if a petitioner is entitled to equitable tolling or a fundamental miscarriage of justice has occurred.  Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline, but only if a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)); see also Lawrence v. Florida, 549 U.S. 327, 336 (2007).   Nevertheless, equitable tolling is typically applied sparingly, Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000), and is available "only in truly extraordinary circumstances." Johnson v. United States, 340 F.3d 1219, 1226 (11th Cir. 2003). The petitioner bears the burden of proving his entitlement to equitable tolling and will not prevail based upon a showing of either extraordinary circumstances or diligence alone; the petitioner must establish both.  See Damren v. Florida, 776 F.3d 816, 821-22 (11th Cir. 2015).

Consideration of an otherwise untimely petition for federal habeas corpus relief may also be appropriate upon a showing that a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has probably resulted in the conviction of one who is actually innocent." McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) (citing Murray v. Carrier, 477 U.S. 478, 495-96 (1986)); see also Wyzykowski v. Dep't of Corr., 226 F.3d 1213, 1218-19 (11th Cir. 2000).  The actual innocence exception "is exceedingly narrow in scope," and a time-barred petitioner seeking to invoke it must be able "(1) to present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (citations omitted).  As the Supreme Court emphasized, "The miscarriage of justice exception,

6

we underscore, applies to a <u>severely confined</u> category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" <u>McQuiggin</u>, 569 U.S. at 394-95 (emphasis added). Moreover, "'actual innocence' means factual innocence, not mere legal insufficiency." <u>Bousley v. United States</u>, 523 U.S. 614, 623-24 (1998) (citation omitted).

Here, Petitioner has not shown extraordinary circumstances prevented him from timely filing his motion. In fact, Petitioner offers no reason why he waited more than four years after his conviction became final to file his § 2255 motion. Petitioner cannot rely on the date the Supreme Court issued its decision in <u>Davis</u> because, as discussed above, the case does not apply to Petitioner's conviction. Moreover, Petitioner has not presented any evidence, much less new evidence, to suggest he did not commit the offense to which he pleaded guilty such that no reasonable juror would have convicted him. Indeed, Petitioner does not assert factual innocence of his crime of conviction. Rather, he relies on legal arguments from, and faulty analogies to, a dissimilar, non-binding, out-of-circuit case, as discussed in Part II(B)(3), *infra*. Thus, neither equitable tolling nor the miscarriage of justice exception saves Petitioner's time-barred motion.

### 2.    Petitioner's Motion Is Procedurally Defaulted

A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." <u>Brown v. United States</u>, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting <u>United States v. Frady</u>, 456 U.S. 152, 166 (1982)). "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." <u>United States v. Montano</u>, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994)). "A ground of error is usually

7

'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055. In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted). In addition, when a defendant has been given an opportunity to review his PSI and to be heard at sentencing, his failure to raise a challenge to the PSI at sentencing will preclude him from raising the challenge in a § 2255 motion. United States v. Peloso, 824 F.2d 914, 915 (11th Cir. 1987). Furthermore, alleged errors concerning the Sentencing Guidelines are not generally cognizable on collateral attack. Spencer v. United States, 773 F.3d 1132, 1138-40 (11th Cir. 2014); Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995) (*per curiam*).

The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions: (1) cause for the default and actual prejudice from the alleged error, or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Mills, 36 F.3d at 1055-56 (citing Murray, 477 U.S. at 496). "Cause" requires a showing of some external impediment that prevented a claim from previously being raised. See Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)). To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." Frady, 456 U.S. at 170. As explained above, the actual innocence exception is exceedingly narrow in

scope and must encompass factual innocence, not legal insufficiency. <u>McQuiggin</u>, 569 U.S. at 394-85; <u>Bousely</u>, 523 U.S. at 623-24.

Petitioner fails to provide any reason, other than the decision date of <u>Davis</u>, *supra*, why he did not raise his current challenges on direct appeal. As explained above, <u>Davis</u>, does not apply to Petitioner's case. Petitioner alternately argues for his immediate release or a five-year reduction in sentence based solely on his analysis of defendants sentenced outside of the Eleventh Circuit he believes received less severe sentences for more serious crimes. Thus, Petitioner cannot satisfy the rigorous fundamental miscarriage of justice exception, <u>see</u> <u>McQuiggin</u>, 569 U.S. at 386, and the remaining challenge to Petitioner's conviction or sentence in Ground Two of the § 2255 motion is procedurally defaulted.

**3.       Petitioner's Ground Two Claim Is Also Without Merit**

Relying on <u>United States v. Wright</u>, 937 F.3d 8 (1st Cir. 2019), Petitioner appears to argue the activity underlying his conviction does not satisfy the elements of § 2339B because there was no showing a foreign terrorist organization made a coordinated effort to obtain his services to aid their goals. (Doc. no. 1, pp. 11-13.) First, decisions of sister circuits to the Eleventh Circuit are not binding on this Court. Second, the analysis in <u>Wright</u> upon which Petitioner appears to rely concerns the propriety of a jury charge given at a § 2339B trial. 937 F.3d at 23-25. The government charged Wright with conspiring to provide material support to a foreign terrorist organization based on a plot to fulfill an ISIS decree to behead an American citizen living in the United States. <u>Id.</u> at 13. The First Circuit Court of Appeals recognized an individual does not work as "personnel" under a foreign terrorist organization's direction, pursuant to § 2339B(h), when he works independent of that organization to advance its goals. <u>Id.</u> at 24, 28-29. Petitioner contends the government could not prove he was working

under the direction of a foreign terrorist organization because he coordinated with a person in Turkey and not with a member of ISIS.  (Doc. no. 1, p. 13.)

Unlike Wright, Petitioner was not convicted of conspiring to support ISIS based on conduct in the United States, but rather was convicted pursuant to his guilty plea of attempting to provided material support to ISIS by traveling to Syria to join ISIS.  CR 115-059, doc. no. 1; Plea Agreement, pp. 1-2.  Petitioner admitted he attempted to provide support directly to ISIS and serve under its direction by traveling out of the United States in an effort to join the terrorist organization, not work independently of it within the United States as in Wright.  See Plea Agreement; PSI ¶¶ 11-12, 16-17, 20.  Thus, even if Wright were binding on this Court, which it is not, the case affords no basis for relief to Petitioner.

## III.  CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 5), Petitioner's § 2255 motion be **DISMISSED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 25th day of August, 2020, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA